NOT DESIGNATED FOR PUBLICATION

No. 115,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESUS ELIZALDE BERRIOZABAL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed February 3, 2017. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Christina Trocheck*, special assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.

*Per Curiam*:  Jesus Elizalde Berriozabal was convicted by a jury of one count of rape, one count of attempted rape, and two counts of aggravated criminal sodomy. Berriozabal was sentenced under Jessica's Law. On appeal, Berriozabal's convictions were affirmed but his sentences were vacated. Our Supreme Court remanded for resentencing. At the resentencing, the trial court denied Berriozabal's motion for durational departure. Berriozabal appealed. We affirmed the trial court's denial of the motion for durational departure. Berriozabal then petitioned our Supreme Court for review. Our Supreme Court granted review and remanded the cause to this court for

1

reconsideration of his motion for durational departure. We then remanded Berriozabal's cause to the trial court for reconsideration of his motion for durational departure without using aggravating factors. The trial court denied Berriozabal's motion.

Berriozabal now appeals this most recent denial of his motion for durational departure. On appeal, Berriozabal argues that the trial court abused its discretion in denying his motion for durational departure because his lack of a significant criminal history and his age when the crimes were committed represented mitigating circumstances that supported a departure. Because we find that the trial court did not abuse its discretion, the court's denial of the motion for durational departure is affirmed.

FACTS

Berriozabal was charged with one count of attempted rape, one count of rape, and two counts of aggravated criminal sodomy. The Supreme Court accurately summarized the evidence leading to Berriozabal's charges in *State v. Berriozabal*, 291 Kan. 568, 243 P.3d 352 (2010).

"The defendant, Jesus Berriozabal, and his girlfriend B.H. met in 2003 and started living together the following year. B.H.'s daughter M.V. moved into the couple's residence in mid-2005, when M.V. was almost 11 years old. B.H.'s other daughter, C.H., came to stay for the summer of 2006, and the two girls shared a bedroom. The girls had previously lived with their maternal grandmother because of B.H.'s drug addiction problems.

"C.H. testified that on July 7, 2006, she left the house to go grocery shopping with her mother but came back inside to ask M.V. if she wanted anything from the store. When she got inside the house, C.H. discovered Berriozabal on top of M.V. in the master bedroom. Berriozabal was naked, with his pants around his ankles. M.V. was still in a dress. When Berriozabal saw C.H., he said, 'Oh, shit,' and jumped to his feet. C.H. told her mother, who confronted Berriozabal. He denied any sexual contact with M.V.

2

"That afternoon, Berriozabal traveled to Mexico to visit his ailing father. Although he had previously discussed waiting until August and taking B.H. and M.V. with him, he left abruptly on July 7, taking only two pairs of jeans and one shirt and without making any arrangements to take a leave of absence from his employer. Berriozabal called B.H.'s cell phone and told her he was leaving the country.

"Meanwhile, on the advice of her own mother, B.H. and her daughters went to the hospital, where M.V. was examined by a sexual assault nurse examiner. M.V. told the nurse that Berriozabal was trying to get on top of her when C.H. came home and that 'I'm always on my back in his room.' This prompted the nurse to ask if this had happened once or more frequently. M.V. told the nurse that this would happen '[e]verytime my mom and my sister go to the store, . . . unless they're going somewhere nearby the home.' Berriozabal would usually take off M.V.'s clothes, too, but this time 'he didn't get mine off yet, 'cause my sister came in just after they had left.'

"M.V. indicated to the nurse that Berriozabal had touched 'my cookie,' pointing to her groin area, with his penis ('wee wee') and his hands. He also tried to put her hand on his penis, and she said he had previously put his penis in her mouth and put his mouth on her vagina. M.V. indicated that she experienced soreness and bleeding after incidents with Berriozabal.

"The State charged Berriozabal with rape, attempted rape, and two counts of aggravated criminal sodomy. Sometime after July 7, 2006, B.H. contacted Berriozabal at the request of law enforcement and asked him to return from Mexico. She attempted to coax his return by telling him the charges had been dropped. Berriozabal returned and was arrested on the charges." *Berriozabal*, 291 Kan. at 573-74.

Berriozabal was convicted by a jury of one count of rape, one count of attempted rape, and two counts of criminal sodomy. Berriozabal filed a motion for downward durational departure, arguing that his lack of a serious criminal history and his age were statutory mitigating factors under Jessica's Law that warranted a departure. The trial court denied the motion finding no substantial or compelling reasons to depart. Pursuant to Jessica's Law, K.S.A. 2006 Supp. 21-4643, Berriozabal received two hard 25 life sentences, to be served consecutively, for the rape and attempted rape convictions. The

court imposed a total of 330 months' incarceration for the aggravated criminal sodomy convictions, to run consecutive to the hard 25 life sentences.

On direct appeal, the Supreme Court affirmed Berriozabal's convictions but remanded his cause for resentencing so that the district court could make findings on his claims of cruel and unusual punishment. See *Berriozabal*, 291 Kan. 568. On remand, the trial court again considered Berriozabal's motion for durational departure. The trial court denied the motion, stating that any mitigating factors that Berriozabal presented were outweighed by the aggravating circumstances of his case. The trial court resentenced Berriozabal.

Berriozabal again appealed. On appeal, our court affirmed the trial court's sentences and denial of Berriozabal's motion for durational departure. *State v. Berriozabal*, No. 108,303, 2014 WL 1707417 (Kan. App. 2014), *rev. granted* 301 Kan. 1047 (2015). Berriozabal petitioned the Supreme Court for review. The Supreme Court granted his petition and remanded the cause to our court for reconsideration of his motion for durational departure in light of its holding in *State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015), that aggravating factors are not to be weighed against mitigating circumstances when considering a departure for a Jessica's Law sentence. We remanded to the trial court with directions to comply with *Jolly*.

On remand to the trial court, Berriozabal again argued that his age and lack of criminal history were mitigating factors that supported a departure sentence. The trial court denied Berriozabal's motion for durational departure, finding "that [his] limited criminal history and his age of twenty-five at the time of the commission of the offense, [did] not constitute substantial and compelling reasons to depart, either individually, or taken together." The trial court then affirmed its previous sentence imposed under Jessica's Law, K.S.A. 2006 Supp. 21-4643.

4

Berriozabal filed a timely notice of appeal from the trial court's denial of his motion for durational departure. Additional relevant facts will be introduced as necessary.

ANALYSIS

Berriozabal's principal argument is that the district court abused its discretion by once again denying his motion for a durational departure.

An appellate court will reverse a sentencing court's denial of a motion for departure under Jessica's Law only if the sentencing court abused its discretion in considering the mitigating factors and circumstances of the case. *Jolly*, 301 Kan. at 325. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Moyer*, 302 Kan. 892, 906, 360 P.3d 384 (2015). An appellant claiming an abuse of discretion bears the burden of showing such abuse occurred. *State v. Stafford*, 296 Kan. 25, 38, 290 P.3d 562 (2012).

An individual convicted of a crime is sentenced based on the sentencing statute in effect at the time the crime was committed. *State v. Williams*, 291 Kan. 554, 559, 244 P.3d 667 (2010). Accordingly, Berriozabal was sentenced under Jessica's Law. In 2006, Jessica's Law mandated that sentencing judges "impose the mandatory minimum term of imprisonment," for first time offenders "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2006 Supp. 21-4643(d). The statute listed the mitigating circumstances which included, but were not limited to, the following:

"(1) The defendant has no significant history of prior criminal activity.
(2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

5

(3) The victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

(4) The defendant acted under extreme distress or under the substantial domination of another person.

(5) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

(6) The age of the defendant at the time of the crime." K.S.A. 2006 Supp. 21-4643(d).

Berriozabal argues that his lack of a significant criminal history and his age when the crimes were committed support a downward durational departure. Boiled down, "Berriozabal contends that . . . his case fits within the 'mitigating circumstances' provided by the legislature in K.S.A. 21-4643(d)(1) and (d)(6)," so the sentencing court abused its discretion in denying his motion.

While a single mitigating factor may result in a departure, our Supreme Court has firmly held that "the mitigating circumstances listed in K.S.A. 2006 Supp. 21-4643(d) do not constitute per se substantial and compelling reasons for a departure sentence." *State v. Ortega-Cadelan*, 287 Kan. 157, 165, 194 P.3d 1195 (2008).

This well-established principle disposes of Berriozabal's argument as presented. Berriozabal plainly argues that "[b]ecause two different statutory mitigating factors supporting a downward durational departure existed, the district court erred in denying [his] motion for a departure." Berriozabal's argument, however, begs the question. "The fallacy of begging the question occurs when a claim is dependent on another claim that is implicitly assumed but has not been established in the argument." *Pioneer Ridge Nursing Facility Operations v. Ermey*, 41 Kan. App. 2d 414, 421, 203 P.3d 4 (2009).

Berriozabal argues that simply because the mitigating factors existed in this case, the court must necessarily have abused its discretion by not granting him a durational departure. But this argument fails to take account of the weighing function of the court, and the mandatory requirement of K.S.A. 2006 Supp. 21-4643(d) that the court must explicitly find "substantial and compelling reasons, *following a review of mitigating circumstances*, to impose a departure." (Emphasis added.) Thus, Berriozabal's argument begs the question because he assumes the very conclusion that he needs to lead us to—that the mitigating factors in his case were so strong that no reasonable person would have denied his motion for durational departure. In assuming the conclusion, Berriozabal's argument fails.

The sentencing court did not abuse its discretion in denying Berriozabal's departure motion even though two statutory mitigating factors existed because Berriozabal has failed to show why denying his motion in light of the mitigating factors was unreasonable or arbitrary. This is enough to dismiss the main proposition of Berriozabal's argument. In the interest of diligence, though, we will consider two other arguments that Berriozabal makes in a less direct manner.

First, Berriozabal argues that the presence of the same statutory mitigating factors could lead one court to deny a departure motion and another court to grant a departure motion. Thus, Berriozabal claims that the sentencing court's actions were arbitrary and an abuse of discretion.

In *Jolly*, our Supreme Court held that

"a judge does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime. This includes those 'circumstances inherent in the crime and the prescribed

7

sentence.' [Citation omitted.] Provided the sentence imposed is within the statutory limits, "'[i]t is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety.'" [Citations omitted.]" 301 Kan. at 324.

Berriozabal's argument ignores these principles. Berriozabal is correct that the existence of identical mitigating factors could necessarily lead to different results in different cases. Berriozabal is not correct, however, in asserting that this makes a sentencing court's actions arbitrary. Instead, by design, it makes the sentencing court's actions discretionary.

A sentencing judge will rely on his or her common sense and judicial discretion when considering a specific defendant's background and the unique facts of an individual case. *Jolly*, 301 Kan. at 324. Where Berriozabal's argument strays then, is in failing to account for the other side of the coin. Certainly two defendants may have identical statutory mitigating factors. But two defendants will not likely have identical facts and circumstances surrounding their cases. The facts of each defendant's situation will be unique. Each defendant's unique facts will be properly considered by the sentencing judge in their respective cases. This leads us to conclude that while a certain mitigating factor may provide one sentencing judge with a substantial and compelling reason to depart in Defendant A's case, the identical mitigating factor may not provide another sentencing judge with a substantial and compelling reason to depart in light of the unique facts and circumstances surrounding Defendant B's case. Thus, Berriozabal's argument that the sentencing court abused its discretion because its actions were arbitrary fails. The sentencing court's actions were not arbitrary. The sentencing court's actions were properly discretionary.

Second, in claiming that the denial of his motion was arbitrary, Berriozabal essentially argues that no reasonable person would take the view adopted by the sentencing court. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). In this case, we believe the sentencing court did not abuse its discretion, because it did not adopt a position that no reasonable person would agree with.

When a sentencing court is tasked with determining whether substantial and compelling reasons for departure exist, our Supreme Court defines ""substantial" as "something that is real, not imagined; something with substance and not ephemeral," while the term "'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary."" *Jolly*, 301 Kan. at 323.

At Berriozabal's resentencing hearing, the judge made findings in regard to Berriozabal's argument that the statutory mitigating factors supported a downward departure in his case. The sentencing court noted that under *Jolly* and as directed by this court it was only to consider mitigating factors on remand. The sentencing court further stated that the only factors that were proper for consideration were Berriozabal's criminal history and age.

At the time of sentencing, Berriozabal's criminal history consisted of prior convictions for driving under the influence, attempted patronizing of a prostitute, and disorderly conduct. The sentencing judge noted that "[t]he higher courts have considered [Berriozabal's] criminal history minimal." Yet the sentencing judge stated that "there is still a count of [Berriozabal] being involved in prostitution or attempting to engage in that type of behavior, which is a sex based offense. And though the Court understands that is significantly different than the current allegation; however, it is not a complete lack of criminal history."

9

Next, the sentencing court considered Berriozabal's age as a mitigating factor. Berriozabal argued that *State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001), and *State v. Favela*, 259 Kan. 215, 911 P.2d 792 (1996), supported his argument that his age gave the sentencing court a substantial and compelling reason to depart.

*Murphy* involved a 19-year-old defendant convicted of kidnapping and robbing five individuals. Murphy had no prior criminal history. Our Supreme Court held that while not a sufficient justification for departure alone, when weighed with other mitigating factors, Murphy's age supported a departure. 270 Kan. at 809. In *Favela*, the defendant entered a no contest plea to a charge of attempted second-degree murder. Our Supreme Court held that "[t]he fact the defendant was only 17 years old at the time of the offense is not a substantial and compelling reason justifying departure as a matter of law, but it may be considered as part of the entire package." 259 Kan. at 235.

The State pointed out that Berriozabal "was not an 18- or 19-year-old kid with no experience in the world; in fact, he was working, he was living with his girlfriend who was the mother of the victim in this case, he assumed responsibilities of a caretaker." The State took a fair position in light of the facts surrounding Berriozabal's case, which can be properly considered by a sentencing court. See *Jolly*, 301 Kan. at 324.

After consideration, the sentencing judge found that "[a]s to age, the Court did not hear why an age of 25 [years old] would be a substantial and compelling reason. It goes without saying that 18 [years old] would be more compelling, 19 [years old] would be more compelling, etc., than a 25-year-old."

Finally, in summarizing the sentencing court's findings, the judge was well-aware of the standard guiding his decision. The judge stated:

"Quoting from the [*State v.*] *Florentin*[, 297 Kan. 594, 303 P.3d 263 (2013),] case, 'Mitigating circumstances do not per se constitute substantial and compelling reasons for departure.' Define [*sic*] substantial as 'something that is real, not imagined, something with substance.' 'Compelling means the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary.' The fact [Berriozabal] was 25 [years old] and had a minimal criminal history meets neither of those definitions in this case. I do not find the fact that [Berriozabal] was 25 [years old] to be substantial and compelling, nor do I find the fact that he had a minimal criminal history to be substantial or compelling, either individually or in the aggregate with both factors being considered simultaneously. The motion for departure is denied."

In reviewing the sentencing court's decision to deny Berriozabal's motion for durational departure, we must not forget that a sentencing court is not under an obligation to grant such a motion. Instead, Jessica's Law mandates that the mandatory minimum sentence be imposed "*unless* the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." (Emphasis added.) K.S.A. 2006 Supp. 21-4643(d). In determining whether mitigating factors rise to the level of substantial and compelling reasons to depart from the mandatory sentence, the sentencing court must necessarily consider the facts of the case. *Jolly*, 301 Kan. at 324.

With these standards in mind, it cannot be said that no reasonable person would take the position adopted by the sentencing court. Here, while Berriozabal did not have an extensive criminal history, he also did not have a complete lack of criminal history. Further, the sentencing court noted that Berriozabal had a prior conviction for attempting to patronize a prostitute. While not identical to Berriozabal's current crimes of conviction, the sentencing judge noted that it was a sex-based offense. Finally, in light of the facts of the case, the judge did not believe Berriozabal's age to be a substantial and compelling reason to depart. As the State properly noted, Berriozabal was not a young 18- or 19-year-old individual. Instead, Berriozabal was 25 years old, held a full-time job, and was

11

living with his girlfriend who was the mother of his victim. Thus, the sentencing court did not abuse its discretion because it did not take a position that no reasonable person would have adopted in light of the facts of Berriozabal's case.

Moreover, if a judge fails to find that substantial and compelling reasons to depart exist, Jessica's Law does not require that the judge explain on the record the reasons for denying the departure motion. See K.S.A. 2006 Supp. 21-4643(d); see also *Florentin*, 297 Kan. at 602 (citing *State v. Harsh*, 293 Kan. 585, 587, 265 P.3d 1161 [2011]). The sentencing judge was very clear that Berriozabal's criminal history and age were not substantial and compelling reasons to depart. The judge was under no statutory obligation to explain his lack of findings. In light of the circumstances surrounding the case and the arguments advanced by both parties, the sentencing court's actions cannot be classified as arbitrary, fanciful, or unreasonable.

In conclusion, the sentencing court did not abuse its discretion in denying Berriozabal's motion for durational departure.

Affirmed.